UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT ANTHONY ARTEAGA,<br>    Plaintiff,<br>v.<br>CITY OF OAKLEY, et al.,<br>    Defendants. | Case No. 19-cv-05725-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br>Re: Dkt. No. 15 |

## I. INTRODUCTION

Plaintiff Albert Arteaga brings this civil rights action against officers of the City of Oakley Police Department and the City of Oakley, asserting claims under 42 U.S.C. § 1983 based on alleged malicious prosecution in violations of the First and Fourth Amendments. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the Motion hearing scheduled for February 7, 2020 pursuant to Civil Local Rule 7-1(b). The Initial Case Management Conference currently scheduled for the same date is continued to **May 15, 2020 at 2:00 p.m.** For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

### A. The Complaint

In the Complaint, Arteaga alleges that on November 9, 2017, his girlfriend called 9-1-1 to report a domestic dispute between herself and Arteaga's uncle. Complaint ¶ 12. He alleges that

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1  Officer Defendants Garrett Wayne and Daniel Buck ("the Officer Defendants") were dispatched to his residence. *Id.* According to Arteaga, when he observed his uncle being subjected to excessive force by the officers, he said "that's enough" and was then tased by Officer Buck, even though Arteaga was "not interfering, obstructing, or delaying" the officers' official duties in any way and also was not disobeying any lawful command. *Id*. ¶ 13.

Arteaga alleges that he was arrested on a fabricated violation of California Penal Code section 148(a)(1) (resisting arrest) and that he was subjected to excessive force. *Id*. ¶ 14, 17. He further alleges that he was prosecuted for violation of section 148(a)(1) based on a deliberately and materially false report by Officer Buck that was provided to the Contra Costa County District Attorney's Office. *Id*. ¶ 15. According to Arteaga, Officer Buck misrepresented the facts about the incident "with the knowledge and purpose of causing [Arteaga] to defend himself against criminal charges which [Officers Wayne and Buck] knew were false and/or to protect and cover-up [Officer Buck's] abuse of authority which included [Arteaga's] false/wrongful arrest, false imprisonment, excessive force, and the violation of his rights to free speech." *Id*. ¶ 15. Arteaga alleges that on July 19, 2019 he was acquitted of the charge of violating California Penal Code § 148(a)(1) after a trial by jury where the jury deliberated approximately ten minutes before reaching its verdict. *Id*. ¶ 14.

Arteaga asserts three claims based on these alleged facts. He asserts his First Claim under 42 U.S.C. § 1983 based on alleged violations of his First and Fourth Amendment rights against the Officer Defendants and Does 1-20. He asserts his Second Claim under 42 U.S.C. § 1983 on the basis of municipal and supervisorial authority against Defendants City of Oakley Police Chief Chris Thorsen ("Chief Thorsen"), the City of Oakley and Does 21-30. While styled as a single claim, this claim asserts two distinct claims: a claim against Chief Thorsen and Does 21-30 based on supervisory liability (hereinafter, the "Supervisor Liability Claim") and a claim against the City of Oakley under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978) (hereinafter, the "*Monell* Claim"). Arteaga's Third Claim is a state law claim for malicious prosecution, which he asserts against the Officer Defendants.

Arteaga's Supervisor Liability Claim is set forth in Paragraph 32 of his complaint, in

2

which he alleges as follows:

> The to-be-identified supervisors, including any already-individually-named Defendants and DOES 21-30, each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of PLAINTIFF. Each of these supervising Defendants either directed his or her subordinates in conduct that violated PLAINTIFF'S rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive PLAINTIFF of rights, OR knew his or her subordinates were engaging in acts likely to deprive PLAINTIFF of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate PLAINTIFF'S rights, and, in fact, did cause the violation of PLAINTIFF'S rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of PLAINTIFF'S rights.

Complaint ¶ 32.

Arteaga's *Monell* Claim is based on three theories: 1) policy, custom or practice; 2) failure to train; and 3) ratification. The policy, custom or practice allegations are set forth in Paragraph 33, in which Arteaga alleges that the conduct of the Officer Defendants was the result of the following policies, customs or practices:

  a. Failure to supervise and/or discipline deputies for misconduct that results in the violation of citizens' civil rights; and/or,
  b. "Hurt a person – charge a person," pursuant to which if an officer wrongly hurts, detains, or arrests a person, the officer will falsely seek to secure the filing and prosecution of a false criminal charge against the person; the officer seeks the filing and prosecution of such charges with the belief that a conviction (or plea) will prevent the person from suing for their injuries wrongfully inflicted by the officer, or that the person will plea to a lesser charge thereby severely limiting the person's right to sue the officer. Tolerating or condoning "hurt a person – charge a person" encourages deputies to use excessive force and/or to falsely arrest and criminally charge persons; and/or;
  c. Using or tolerating excessive and/or unjustified force and/or false arrests and false incident reporting; and/or;
  d. Using or tolerating inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of excessive force or deputy misconduct, including claims made under California Government Code section 910 et seq.; and/or
  e. Failing to institute, maintain, or effectively administer and enforce proper and adequate training, supervision, policies, protocol and procedures concerning appropriate/constitutional responses to and investigation of 9-1-1 calls for service that,

3

        among other things, do not permit and authorize the immediate pointing of weapons at suspects (excessive force); and/or to cover-up violations of constitutional rights by any or all of the following:

                i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures;
                ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity by officers; and
                iii. by allowing, tolerating, and/or encouraging officers to: to not file complete and accurate reports by officers; to file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by officers, by withholding and/or concealing material information;

    f. Allowing, tolerating, and/or encouraging a "code of silence" among law enforcement officers whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;
    g. Using or tolerating inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of officer misconduct;
    h. Allowing, encouraging and fostering a course of action by OPD's officers that they could use their powers of arrest and force to retaliate against a citizen who was profane, verbally challenging, insulting and/or disrespectful and/or critical of them and then cover up their abuse of power by violating their duty to truthfully report their conduct with the citizen to avoid being held accountable for such abuse of authority. In the parlance used, Defendants de facto policy and custom of punishing a citizen who failed the "attitude test" encouraged, fostered, and is implemented in the subject claims brought by PLAINTIFF; and
    i. Failing to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (h) above, with deliberate indifference to the rights and safety of PLAINTIFF and the public, and in the face of an obvious need for such policies, procedures, and training programs.

*Id.* ¶ 33.

Arteaga's failure-to-train allegations are set forth in Paragraph 34, in which he alleges that the City of Oakley "may have instituted policies or training addressing some or all of the topics listed [in Paragraph 33] but has, either through negligence or deliberate indifference to citizen's rights, failed to properly oversee and enforce such policies and/or training." Finally, in Paragraph 36, Arteaga alleges that the City of Oakley is "liable for the violations of [Arteaga's] rights by its final policy makers, as described above." This may be a reference to Paragraph 33, in which

Arteaga alleges that the unconstitutional actions and omissions of Defendants was "ratified by policy making officials" for the City of Oakley and/or Oakley Police Department.

**B. The Motion**

In the Motion, Defendants argue that both the *Monell* Claim and the Supervisor Liability Claim should be dismissed for failure to state a claim under Rule 12(b)(6) because Arteaga's allegations are too conclusory to state claims that are plausible on their face, as is required under *Ashcroft v. Iqbal*, 556 U.S. 679 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Motion at 1.

With respect to Arteaga's *Monell* Claim based on policy, custom or practice, Defendants contend Arteaga's allegations are insufficient because he has not alleged any facts suggesting either that the policies he has pled are express policies that have been formally adopted by the City of Oakley or that there is a "'widespread' practice of unconstitutional conduct which is 'so permanent and well settled as to constitute a "custom or usage."'" *Id.* at 4-5 (quoting *City of Saint Louis v. Praprotnick*, 485 U.S. 112, 123 (1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).[2] With respect to the latter, Defendants quote the Ninth Circuit's decision in *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) holding that "[l]iability for an unconstitutional custom may not be predicated on isolated or sporadic incidents." *Id.* at 4. Defendants argue that courts (including the undersigned) have relied on this rule in requiring specific allegations that there have been other similar incidents to raise a plausible inference of custom or usage under *Monell*. *Id.* at 4 (citing *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 WL 1650563, at *3 (N.D. Cal. May 2, 2017); *Bedford v. City of Hayward*, No. 3:12-CV-00294-JCS, 2012 WL 4901434, at *12-13 (N.D. Cal. Oct. 15, 2012)). Focusing in particular on Arteaga's allegation that the City of Oakley has a custom or practice of "hurt a person – charge a person," Defendants contend Arteaga's allegations are too conclusory to state a claim because

---

[2] The *Praprotnik* pin cite provided by Defendants (p. 123) is incorrect; the language from the *Adickes* decision that is quoted above is found at page 127 of *Praprotnik*. The undersigned made the same error in *Bedford v. City of Hayward*, No. 3:12-CV-00294-JCS, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012). Although the undersigned regrets the error in *Bedford*, this mistake has no impact on the reasoning or holding of that case.

5

they "only pertain to [Arteaga's] single isolated interaction with two [Oakley Police Department Officers] on November 9, 2017, and make no mention of any other person being subjected to the unconstitutional conduct associated with the "hurt a person – charge a person" theory." *Id.* at 6.

With respect to Arteaga's *Monell* claim based on ratification, Defendants argue that Arteaga's allegations are insufficient because he has alleged no facts showing that any final policy maker made a "'conscious, affirmative choice' . . . to approve the subordinate's decision." *Id*. at 7 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)). It is not enough, they contend, to allege merely that a policy maker refused to overrule a subordinate's completed act. *Id*. at 6 (citing *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999)). To the extent Arteaga asserts that Chief Thorsen or any other final policy maker ratified the conduct of the Officer Defendants, Defendants argue that the claim fails because Arteaga has not "provide[d] any facts demonstrating Chief Thorsen made a 'conscious, affirmative choice' to ratify the alleged unconstitutional conduct." *Id.* at 7 (citing *Stein v. City of Piedmont*, No. 16-CV-01172-JCS, 2016 WL 4269514, at *7 (N.D. Cal. Aug. 15, 2016)). Defendants further assert Arteaga's allegations are so "jumbled" that it is not clear he is even asserting a *Monell* claim based on ratification. *Id*.

Defendants argue that Arteaga's *Monell* Claim also fails to state a claim to the extent he asserts it based on failure to train. *Id*. at 7-8. Defendants acknowledge that failure to train may give rise to liability on the part of a municipality where the "training deficiency is so egregious that it 'amount[s] to deliberate indifference to the rights of persons with whom the police come into contact.'" *Id*. at 7 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Arteaga's allegations here, however, are so conclusory as to the alleged failure to train, that he has not raised a plausible inference that the conduct in this case was the result of any such training deficiency, Defendants contend. *Id*.

Finally, Defendants argue that Arteaga's claim of Supervisor Liability must be dismissed because he has alleged no facts that give rise to a plausible inference that there is a "causal connection demonstrating a wrongful action taken by Chief Thorsen caused the alleged unconstitutional conduct of Officers Wayne and Buck." *Id*. at 8-9 (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Defendants further assert that he has alleged no such conduct on the

6

1    party of any city supervisor. *Id*.

2    Defendants ask the Court to dismiss Arteaga's Second Claim in its entirety and without
3    leave to amend. *Id*. at 3, 9.

**III.   ANALYSIS**

   **A.   Legal Standard under Rule 12(b)(6)**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable

7

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Whether *Monell* Claim is Adequately Alleged

#### 1. Legal Standards Governing *Monell* Liability

Under *Monell*, a municipality cannot be held liable for constitutional injuries inflicted by its employees on a theory of respondeat superior. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A plaintiff seeking to establish municipal liability under section 1983 may do so in one of three ways: 1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the plaintiff may demonstrate that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

#### 2. Discussion

##### a. Custom or Practice Allegations

Under § 1983, a municipality may be held liable based on an unconstitutional policy even where it is not an express municipal policy that has been formally adopted. In particular, the Supreme Court has recognized that a municipality may be held liable on the basis of an unconstitutional policy if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-168 (1970)). In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist

8

of more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits." *Warner v. County of San Diego*, No. 10–1057, 2011 WL 662993, *4 (S.D.Cal. Feb.14, 2011).

Here, Arteaga has alleged a series of unofficial policies based on custom or practice, including policies of "hurt a person – charge a person," using excessive force and encouraging a "code of silence." Yet he has not alleged any specific facts that render his allegations of an unconstitutional custom or practice plausible. He has alleged no other similar incidents that would tend to support an inference that these policies were "well settled." *See Lozano v. Cty. of Santa Clara,* No. 19-CV-02634-EMC, 2019 WL 6841215, at *18 (N.D. Cal. Dec. 16, 2019) (dismissing *Monell* claim based on custom and practice on the pleadings because the plaintiff had not alleged that any other person was subjected to similar treatment). Nor has he alleged any other specific facts that give rise to a plausible inference as to the existence of any of the customs and practices alleged in the Complaint. Accordingly, the Court dismisses Arteaga's *Monell C*laim to the extent it is based on an alleged unconstitutional custom or practice.

                b. Ratification Allegations

The Supreme Court has held that "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Thus, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality . . . ." *Praprotnik*, 485 U.S. at 127.

Arteaga's allegations as to ratification are scant and entirely conclusory. He alleges on information and belief that the unconstitutional actions "of Defendants herein" were pursuant to the customs, policies and/or practices listed in Paragraph 33 or "stated in the alternative . . . were directed, encouraged, allowed, and/or ratified by policy making officials" for the City of Oakley "and/or" the Oakley Police Department. Complaint ¶ 33. Yet he alleges no specific facts that would give rise to a plausible inference that any official with policy-making authority made a "deliberate" choice or approved the basis for the unconstitutional conduct alleged by Arteaga as would be required to hold the City of Oakley liable on a theory of ratification. Therefore, the

9

Court dismisses Arteaga's *Monell* Claim to the extent it is based on a theory of ratification.

### c. Failure to Train Allegations

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. Thus, a municipality may be held liable based on a failure to train only where it "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id*. (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). The Supreme Court has explained that this high threshold for establishing municipal liability is consistent with its holding in *Monell* because "permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities" and would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs." *City of Canton,* 489 U.S. at 392.

In *City of Canton*, the Court addressed the circumstances under which a municipality can be held liable under § 1983 based on inadequate training, describing the inquiry as follows:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. *See Springfield v. Kibbe*, 480 U.S., at 268, 107 S.Ct., at 1120 (O'CONNOR, J., dissenting); *Oklahoma City v. Tuttle, supra*, 471 U.S., at 821, 105 S.Ct., at 2435 (opinion of REHNQUIST, J.). It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-391.

Arteaga has alleged that the City of Oakley is liable for the conduct of the Officer Defendants based on inadequate training but has alleged no specific facts regarding the type of training that was deficient, the nature of the alleged deficiencies or how the allegedly unconstitutional conduct of the Officer Defendants resulted from the training. Moreover, he has alleged that the failure to train was "through negligence or deliberate indifference." Complaint ¶ 35. As discussed above, though, a negligent failure to train is not sufficient to establish an unconstitutional policy; rather, faulty training can support a *Monell* claim only where it rises to the level of deliberate indifference. In short, the allegations in Arteaga's complaint do not give rise to a plausible inference that the City of Oakley can be held liable on the basis of any inadequate training program.

Accordingly, the Court dismisses Arteaga's *Monell* Claim to the extent it is based on inadequate training.

### C. Whether Supervisor Liability Is Sufficiently Alleged

Under § 1983, a supervisor can be held liable in his or her individual capacity "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). In the Complaint, the allegations of supervisor liability are entirely conclusory. No specific facts are alleged that would support a plausible inference that Chief Thorsen (or any other supervisor) was personally involved in the incident or that there was any causal connection between the Officer Defendants' conduct and the unconstitutional conduct of any supervisor.

Accordingly, the Court dismisses Arteaga's Second Claim to the extent it is based on alleged supervisor liability.

### D. Whether Plaintiff Should be Permitted to Amend

"The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilley Enters. v. Atl. Richfield Co*., 588

F.3d 659, 669 n. 8 (9th Cir. 2009)) (internal quotation and citation omitted). The Court concludes that Arteaga might be able to amend his Second Claim to state a claim. Because amendment is not futile, he will be permitted to amend his Complaint to address the deficiencies set forth in this Order.

**IV.   CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part the Motion. Plaintiff's Second Claim is dismissed with leave to amend. Arteaga may file an amended complaint within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

Dated: January 31, 2020

JOSEPH C. SPERO
Chief Magistrate Judge